UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

BRYAN J. PETERSON,

Plaintiff,

v.

MICHAEL J. ASTRUE[1], Commissioner of
Social Security,

Defendant.

CASE NO.      C06-5623FDB-KLS

REPORT AND
RECOMMENDATION

Noted for June 8, 2007

Plaintiff, Bryan J. Peterson, has brought this matter for judicial review of the denial of his application for disability insurance benefits.  This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976).  After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Honorable Franklin D. Burgess' review.

FACTUAL AND PROCEDURAL HISTORY

Plaintiff currently is 28 years old.[2]  Tr. 21.  He has a general equivalency diploma and past work

---

[1]Pursuant to Federal Rule of Civil Procedure 25(d)(1), Michael J. Astrue, who recently became acting Commissioner of Social Security, hereby automatically is substituted for Joanne B. Barnhart.

[2]Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION
Page - 1

experience as a cook, drywall installer and moving company laborer. Tr. 18, 48, 58, 274.

On May 1, 2003, plaintiff protectively filed an application for disability insurance benefits, alleging disability as of September 2, 2002, due to "[b]one disease/tissue dysplasia in the right arm," which restricts movement in that arm. Tr. 13, 42-44, 47. His application was denied initially and on reconsideration. Tr. 21-23, 27. A hearing was held before an administrative law judge ("ALJ") on May 25, 2006, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. Tr. 270-99.

On June 27, 2006, the ALJ issued a decision, determining plaintiff to be not disabled, finding specifically in relevant part:

(1) at step one of the disability evaluation process,[3] plaintiff had not engaged in substantial gainful activity since his alleged onset date of disability;

(2) at step two, plaintiff had "severe" impairments consisting of fibrous dysphasia, status-post humeral corrective osteotomy with residual chronic pain in the right arm, and depression;

(3) at step three, none of plaintiff's impairments met or equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4) at step four, plaintiff had the residual functional capacity to perform a modified range of light work, which precluded him from performing his past relevant work; and

(5) at step five, plaintiff was capable of performing other jobs existing in significant numbers in the national economy.

Tr. 15-20. Plaintiff's request for review was denied by the Appeals Council on August 25, 2006, making the ALJ's decision the Commissioner's final decision. Tr. 5; 20 C.F.R. § 404.98.

On October 26, 2006,[4] plaintiff filed a complaint in this Court seeking review of the ALJ's decision.

_____

[3]The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step, the disability determination is made at that step, and the sequential evaluation process ends. Id.

[4]As indicated herein, plaintiff's complaint was filed more than sixty days after the Appeals Council denied plaintiff's request for review. A party may obtain judicial review of the Commissioner's final decision by commencing a civil action in federal court "within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow." 42 U.S.C. § 405(g); 20 C.F.R. § 404.981 (claimant may file action in federal court within 60 days after the date notice of the Appeals Council's action is received); 20 C.F.R. § 404.982 (any party to Appeals Council's decision or denial of review may request time for filing action in federal court be extended). This "sixty-day time limit is not jurisdictional, but is instead a statute of limitation which the Secretary may waive." Banta v. Sullivan, 925 F.2d 343, 345 (9th Cir. 1991). As such, failure to file within the sixty-day time limit is an affirmative defense, which "is properly raised in a responsive pleading." Vernon v. Heckler, 811 F.2d 1274, 1278 (9th Cir. 1987) (citing Federal Rule of Civil Procedure 8(c)). Because the Commissioner failed to raise the statute of limitations as an affirmative defense in her responsive pleading, the issue is waived, and the undersigned will deal with this matter on its merits.

1  (Dkt. #1).  Specifically, plaintiff argues that decision should be reversed and remanded for an award of

2  benefits because the ALJ erred in assessing his residual functional capacity.  The undersigned agrees the

3  ALJ erred in determining plaintiff to be not disabled, but, for the reasons set forth below, recommends that

4  while the ALJ's decision should be reversed, this matter should be remanded to the Commissioner for

5  further administrative proceedings.

6  <u>DISCUSSION</u>

7  This Court must uphold the Commissioner's determination that plaintiff is not disabled if the

8  Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to

9  support the decision.  <u>Hoffman v. Heckler</u>, 785 F.2d 1423, 1425 (9th Cir. 1986).  Substantial evidence is

10  such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  <u>Richardson</u>

11  <u>v. Perales</u>, 402 U.S. 389, 401 (1971); <u>Fife v. Heckler</u>, 767 F.2d 1427, 1429 (9th Cir. 1985).  It is more than

12  a scintilla but less than a preponderance.  <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119 n.10 (9th Cir.

13  1975); <u>Carr v. Sullivan</u>, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991).  If the evidence admits of more than

14  one rational interpretation, the Court must uphold the Commissioner's decision.  <u>Allen v. Heckler</u>, 749 F.2d

15  577, 579 (9th Cir. 1984).

16  I.  <u>The ALJ's Assessment of Plaintiff's Residual Functional Capacity</u>

17  If a disability determination "cannot be made on the basis of medical factors alone at step three of

18  the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and

19  assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") 96-8p,

20  1996 WL 374184 *2.  A claimant's residual functional capacity assessment is used at step four to determine

21  whether he or she can do his or her past relevant work, and at step five to determine whether he or she can

22  do other work. <u>Id.</u>  It thus is what the claimant "can still do despite his or her limitations." <u>Id.</u>

23  A claimant's residual functional capacity is the maximum amount of work the claimant is able to

24  perform based on all of the relevant evidence in the record. <u>Id.</u>  However, a claimant's inability to work

25  must result from his or her "physical or mental impairment(s)." <u>Id.</u>  Thus, the ALJ must consider only those

26  limitations and restrictions "attributable to medically determinable impairments." <u>Id.</u>  In assessing a

27  claimant's residual functional capacity, the ALJ also is required to discuss why the claimant's "symptom-

28  related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the

medical or other evidence." Id. at *7.

In this case, the ALJ assessed plaintiff with the following residual functional capacity:

> The claimant can sit and stand/walk 6 hours each in an 8-hour workday, and occasionally crawl and climb ramps and stairs. He is limited in reaching overhead and in engaging in gross and fine manipulation with his right upper extremity. The claimant is moderately limited in his ability to maintain concentration and attention for extended periods. These limitations do not preclude the performance of simple and some complex repetitive tasks. There are no other significant limitations.

Tr. 16. Plaintiff argues this assessment is not supported by substantial evidence. For the reasons set forth below, the undersigned agrees the ALJ erred in making that assessment.

A.    Plaintiff's Pre-Surgical Residual Functional Capacity

On September 11, 2003, plaintiff underwent a right humeral double osteotomy and intramedullary rodding for significant bony deformity in his right arm. Tr. 157, 179. Plaintiff argues the ALJ's assessment of his residual functional capacity focused primarily on the period after this surgery was performed, and did not distinguish the residual functional capacity he had during the period prior thereto and since his alleged onset date of disability. Specifically, plaintiff asserts that because a disabling condition must last for at least one year in duration, and the period between the date he alleged he became disabled, September 2, 2002, and the date of his surgery was longer than a year, the ALJ erred in failing to assessing a separate residual functional capacity for that period. See 42 U.S.C. § 423(d)(1)(A); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999); see also 20 C.F.R. § 404.1505(a).

Plaintiff, however, has not shown that he was more significantly limited than found by the ALJ for the period prior to the date of his surgery. See Tackett, 180 F.3d at 1098-99 (claimant has burden of proof on steps one through four of the sequential disability evaluation process). Plaintiff points to the medical evidence in the record showing that he had a "marked deformity" with "angulation" and "obvious bowing" in his right upper extremity, that he complained of 10 out of 10 and worsening pain for more than six months preceding the surgery, that his pain likely was due to "mechanical malalignment" and the "disease process in his bone," that narcotics did not provide him effective pain relief, that he was referred to a pain specialist, and that it was felt surgery would significantly improve his symptoms. See Tr. 141-42, 165.

None of this evidence though establishes that plaintiff actually was assessed with any significant work-related limitations. Indeed, in late May 2003, it was noted that while plaintiff's right upper arm was "diminished in size compared to the left side," his arm musculature was "well developed," and his shoulder

REPORT AND RECOMMENDATION
Page - 4

1  function was "essentially normal." Tr. 165.  In early September 2003, just three days before he underwent

2  surgery, plaintiff's shoulder function again was found to be "normal", with full muscle strength in both his

3  upper extremities. Tr. 186.  The normal right upper extremity strength and function findings continued to be

4  made after the surgery was performed as well. See Tr. 155, 158, 178, 184.

5          While plaintiff may have complained of extreme and worsening pain, furthermore, the ALJ did not

6  find all of plaintiff's allegations regarding the intensity, duration and limiting effects of his pain and other

7  symptoms to be fully credible (Tr. 16-18), a finding plaintiff has not challenged.  As such, plaintiff hardly

8  can argue that those complaints support a more limited residual functional capacity assessment, or that the

9  ALJ would be required to believe them.  For the same reason, the mere fact that plaintiff complained that

10 his narcotic medication was not effective also is not a valid basis for claiming error here.  In addition, just

11 because plaintiff may have been referred to a pain specialist and it may have been felt that surgery might

12 improve his symptoms does not alone show he suffered from significant work-related limitations.  Thus, the

13 undersigned finds no fault on the part of the ALJ here.

14          B.    Dr. Trucksess

15          The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the

16 medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).  Where the medical evidence in the

17 record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the

18 ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).  In such cases, "the ALJ's conclusion must

19 be upheld." Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 601 (9th Cir.

20 1999).  Determining whether inconsistencies in the medical evidence "are material (or are in fact

21 inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts

22 "falls within this responsibility." Id. at 603.

23          In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be

24 supported by specific, cogent reasons." Reddick, 157 F.3d at 725.  The ALJ can do this "by setting out a

25 detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation

26 thereof, and making findings." Id.  The ALJ also may draw inferences "logically flowing from the evidence."

27 Sample, 694 F.2d at 642.  Further, the Court itself may draw "specific and legitimate inferences from the

28 ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

REPORT AND RECOMMENDATION
Page - 5

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3d Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir.,2004); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

On November 25, 2003, plaintiff underwent a physical examination performed by M. E. Trucksess, M.D. Dr. Trucksess diagnosed him with "[f]ibrous dysplasia, recent surgery right shoulder with reduced range of motion of the right shoulder." Tr. 149. He opined that plaintiff had "[m]oderate disability with regard to his right arm," and that he "eventually may be employable again, but at the present time is recovering from his surgery." Tr. 150. With respect to Dr. Trucksess' opinion, the ALJ found as follows:

> This report is given some weight, but the conclusion that the claimant is not employable has no support in the claimant's overall right arm functioning. It may be reasonable to assume that the claimant could not work while recovering from his surgery, but any disability in that regard soon resolved, as shown by the benign examination findings.

Tr. 17. Plaintiff argues this is not a legitimate basis upon which to reject Dr. Trucksess' opinion, nor is it supported by substantial evidence. The undersigned disagrees.

Plaintiff asserts his disability did not resolve soon after his surgery. As an example, he points to a medical record from late December 2003, in which the examining physician stated that he was applying for

disability secondary to being off work, and that "[w]e will be happy to assist this patient with his ongoing application for disability." Tr. 155.  All this shows, however, is plaintiff reported that he was applying for disability, that he was not working at the time, and that he was offered assistance with his application.  It contains no actual opinion that he was disabled or that his application had merit.

Plaintiff points to another medical record in which a different physician who examined him at the time stated:

> Brian has already completely forgotten the preoperative conversation regarding difficult procedure and the need for lengthy rehab, and difficulty to even function from such a difficult procedure. . . . Discussed again the need for six months of followup for this type of procedure.  I also stressed the avoidance of excessive activity in the right upper extremity.

Tr. 178.  Again, however, this quoted language contains no actual medical opinion that plaintiff had any clinical findings demonstrating such difficulties, only a reminder that functioning could be difficult during the six-month recovery period.  Indeed, plaintiff fails to mention that he was found during this examination to have full shoulder and elbow range of motion and no neurologic deficit. Id.  The pre-operative pain that was "radiating up and down" his arm also was deemed to have been "completely corrected." Id.  As noted above, furthermore, any limitations of less than a year duration will not be found disabling.

It is true that plaintiff was "taken back to the operating room in November 2004 for an interlocking screw distally," apparently due to "persistent pain and nonunion." Tr. 215.  This though occurred well over a year following his initial surgery in early September 2003.  As discussed above, plaintiff has come forth with no medical evidence to show continuing significant functional limitations during that period.  Rather, that evidence showed fairly normal right upper extremity functioning and even improvement.  In any event, although plaintiff did complain of continuing pain at times thereafter, the weight of the medical evidence in the record shows his pain and other right shoulder symptoms for the most part significantly improved over the months subsequent to his November 2004 operation and into the early part of 2006. See Tr. 198, 200, 208, 215-16, 220, 228, 230, 234, 236, 238, 240-41, 244, 246, 249, 257, 259, 267.

C.   Dr. Howlett

Plaintiff was seen by Andrew T. Howlett, M.D., in late March 2005.  Although Dr. Howlett did not conduct a physical examination at the time, he did opine that:

> In regards to his extremity, I think at this point he is severely limited in any activities that he would be able to do.  He is on chronic narcotics at this time and has significant pain issues.  He would not be cleared for any heavy labor-type activity.  Given his high

narcotic use and chronic pain, I do not think he would be well suited for a desk job either at this point.  Our plan is ultimately to get him in Chronic Pain Service management to help wean him off his narcotics.  At that point, consideration for employment in my mind would be that he would be more of a candidate for a desk job rather than a labor-type job.  At this point, I do not think he is ready for any employment.

Tr. 224.

The ALJ addressed Dr. Howlett's opinion as follows:

[I]n March 2005 Andrew Howlett, M.D., opined that the claimant was probably not ready for work.  That conclusion was based on a restriction from heavy labor and pain with narcotic use that would likely prevent a desk job (exhibit 16F:14).  That is considered, but Dr. Howlett's opinion was not based on vocational assessments.  The claimant may be restricted from heavy work, but the testimony of the vocational expert is given greater weight in terms of assessing the claimant's ability to perform "desk" jobs.

Tr. 17.  Plaintiff argues these do not constitute legitimate reasons, nor are they supported by the substantial evidence in the record.  Specifically, plaintiff asserts the ALJ misconstrued Dr. Howlett's opinion as being a vocational opinion, when in fact it is a medical opinion as to his ability to function given his chronic pain and narcotic use.  The undersigned largely agrees.

The undersigned does find the issue as to whether plaintiff, given all of his medically determinable impairments and limitations, eventually would be able to perform a desk job is more properly the province of the vocational expert and, in the end, the ALJ.  This is because whether or not a claimant can perform a particular job or type of work is a vocational, rather than a medical, question.  In addition, medical source opinions are given no special significance to issues reserved to the Commissioner, including a claimant's residual functional capacity and "the application of vocational factors." 20 C.F.R. § 404.1527(e).  The final responsibility for deciding those issues, therefore, is that of the ALJ. Id.  However, medical source opinions on these issues still must be considered. Id.

Indeed, the ALJ appears to have adopted Dr. Howlett's opinion that plaintiff was restricted from performing heavy work. See Tr. 17, 224.  Dr. Howlett, furthermore, also clearly provided his opinion on other non-purely vocational issues.  For example, he opined that plaintiff was "severely limited in any activities that he would be able to do." Tr. 224.  Dr. Howlett also specifically noted that plaintiff's "high narcotic use and chronic pain" not only limited his ability to perform heavy labor, but likely would affect his ability to perform desk work as well.  Thus, while the ALJ was not required to give this opinion any special significance as to whether plaintiff ultimately had the vocational capability of performing that type of work,

1  it still bears on plaintiff's work-related functional capabilities.  It is not clear that the ALJ properly

2  considered Dr. Howlett's opinion in this light.

3       Defendant argues the medical evidence in the record supports the ALJ's rejection of Dr. Howlett's

4  opinion, and points out that the ALJ noted some of that evidence contradicted it.  However, although the

5  ALJ did go on to discuss other medical evidence in the record indicating improvement in plaintiff's use of

6  his right arm (Tr. 17), he did not provide this as a specific reason for rejecting that opinion.  Instead, as set

7  forth above, the ALJ merely rejected Dr. Howlett's opinion regarding plaintiff's ability to do desk work on

8  the basis that it was not properly based on vocational assessments.  In addition, the fact that Dr. Howlett's

9  opinion may not be entirely consistent with the ALJ's assessment of plaintiff's residual functional capacity is

10  irrelevant if the ALJ erred in evaluating that opinion in the first place, as he did here as discussed above.

11  Finally, while the ALJ may have adopted the opinion of an examining psychiatrist regarding plaintiff's ability

12  to concentrate in light of his perception of pain, this again was not given as an actual reason for the ALJ's

13  rejection of Dr. Howlett's opinion.

14       D.   Dr. Hoskins

15       A physical residual functional capacity assessment was completed by Robert G. Hoskins, M.D., a

16  non-examining consulting physician, in early June 2004.  On that form, Dr. Hoskins found plaintiff to be

17  capable of lifting and/or carrying 20 pounds occasionally and 10 pounds frequently, standing and/or walking

18  for about six hours in an eight-hour day, and sitting for about six hours in an eight-hour workday. Tr. 113.

19  He also found that other than the lifting and carrying limitations, plaintiff was unlimited in his ability to push

20  and/or pull. Id.  Dr. Hoskins further noted that "[f]ull credibility" could not be established, as there was "no

21  objective reason" plaintiff could not sit, stand and walk for more than one hour or lift more than ten pounds

22  on an occasional basis. Tr. 114.  In addition, Dr. Hoskins opined that plaintiff could only occasionally climb

23  ladders, ropes and scaffolds on an occasional basis due to right upper extremity pain, and that he was

24  limited in reaching overhead and in handling with that extremity. Tr. 114-15.

25       The ALJ found Dr. Hoskins' findings to be "consistent with the evidence," and "actually generous"

26  in plaintiff's favor "in light of his substantial post-surgical recovery." Tr. 17.  Plaintiff argues the ALJ erred

27  in failing to mention the opinion Dr. Hoskins gave that he would not be able to lift more than 10 pounds on

28  an occasional basis, and in not resolving the inconsistency between this opinion and the box he checked

1   indicating plaintiff could lift up to 20 pounds occasionally.  It appears plaintiff is referring to the statement

2   made by Dr. Hoskins noted above that there was no objective reason as to why he could not lift more than

3   10 pounds on an occasionally basis.  In other words, Dr. Hoskins merely was saying here that the evidence

4   failed to show plaintiff was limited to lifting only 10 pounds occasionally, which is not inconsistent with the

5   box he earlier checked indicating a capability of lifting more weight than that.

6          Because there is no conflict as argued by plaintiff, therefore, the ALJ for this reason did not err in

7   adopting Dr. Hoskins' findings.  As discussed above, however, the ALJ did err in rejecting the opinion of

8   Dr. Howlett, which was dated subsequent to the findings made by Dr. Hoskins.  Because Dr. Howlett was

9   one of plaintiff's treating physicians, his opinion, unless properly rejected, is entitled to more weight than

10  that of Dr. Hoskins, a non-examining physician.  This does not mean that the ALJ necessarily was required

11  to adopt Dr. Howlett's opinion regarding plaintiff's disability, particularly in light of the improvement that

12  plaintiff showed over the months following the issuance of that opinion.  It does mean, however, that the

13  Commissioner on remand should re-consider Dr. Hoskins opinion along with that of Dr. Howlett, and then

14  resolve any inconsistencies between the two.

15         D.    Dr. Regets

16         In late July 2004, a psychiatric review technique form was completed by Charles Regets, Ph.D., a

17  non-examining consulting physician, in which plaintiff was found to have mild restrictions in his activities of

18  daily living, mild difficulties in maintaining concentration, persistence or pace, moderate difficulties in

19  maintaining social functioning, and no repeated episodes of decompensation. Tr. 130.  A mental residual

20  functional capacity assessment form also was completed at the same time, in which Dr. Regets found

21  plaintiff to be moderately limited in his ability to: maintain attention and concentration; perform activities

22  within a schedule; maintain regular attendance; be punctual; work in coordination with or proximity to

23  others; complete a normal workday and workweek; perform at a consistent pace; interact appropriately with

24  the general public; accept instructions and respond appropriately to criticism from supervisors; get along

25  with co-workers and peers; and respond appropriately to changes in the work setting. Tr. 134-36.  In a

26  narrative statement at the end of this form, Dr. Regets concluded in relevant part as follows:

27         The claimant demonstrates the ability to complete simple and complex tasks for periods
           of two hours or more . . . The claimant has the ability to interact with a supervisor and a
28         few co-workers . . . any public contact should be brief and superficial. . . . The claimant
           has the ability to adapt to the normal stresses of a competitive work environment . . . He

1   would do best in a job where duties are clearly spelled out and not subject to frequent
2   changes.

3   Tr. 136-37.

4          With respect to Dr. Regets' opinion, the ALJ stated that although he did consider it, there was no
5   evidence that plaintiff had social difficulties, and that it appeared the limitations in concentration and task
6   performance were the only restrictions supported by the evidence. Tr. 18.  Plaintiff argues the ALJ erred in
7   rejecting Dr. Regets' findings regarding his social difficulties, asserting that these findings were based on his
8   self-reports of his low frustration tolerance, lashing out more readily at others, involvement in marriage
9   therapy, and use of psychiatric medication without improvement, which he asserts supports those findings.
10  Defendant counters that these examples do not relate specifically to plaintiff's ability to relate to the public.
11  The undersigned, however, finds the ALJ erred in addressing Dr. Regets' opinion.

12         Defendant is correct that the evidence to which plaintiff cites does not necessarily establish such a
13  limitation on public contact.  For example, plaintiff points to an adult third party function report his wife
14  completed, in which she checked a box indicating he had problems getting along with family, friends,
15  neighbors or others due to being "very frustrated because of disability." Tr. 89.  However, plaintiff fails to
16  note that another such report completed by his mother indicated he had no such problems. Tr. 80.  Further,
17  while the other evidence on which he relies (see Tr. 171, 173-74, 189, 199) does indicate he reported
18  lashing out and being easily angered, that evidence does not indicate with whom he lashed out and became
19  easily angered or in what context, that is, only with family and friends or with the general public as well.  In
20  addition, a psychiatric evaluation conducted by James Parker, M.D., in early July 2004, the only other
21  objective medical evidence in the record concerning plaintiff's mental impairments, failed to reveal any
22  limitations in terms of social functioning. See Tr. 189-91.

23         Nevertheless, the ALJ did not discuss this evidence with any specificity.  Rather, he merely stated
24  that there was no evidence that plaintiff had social difficulties, and that while the evidence supported the
25  finding that he did have some limitations in functioning – namely, concentration and task performance – it
26  did not do so to the point of disability. Tr. 18.  Such statements are too vague and general to provide a basis
27  upon which the Court can conclude the ALJ's reasons for rejecting the mental functional limitations found
28  by Dr. Regets were proper.  The undersigned thus is unable to glean exactly on what evidence in the record

the ALJ rejected the many moderate and other significant mental functional limitations Dr. Regets found

that plaintiff had. See Tr. 135-36. Defendant argues Dr. Parker's opinion supports the ALJ's findings here,

but, as discussed above, the ALJ did not give this as a specific reason. In any event, the ALJ apparently did

not find Dr. Parker's evaluation to be completely credible, as he gave it only "some weight." Tr. 17. Thus,

on remand, the Commissioner shall re-consider the findings made by Dr. Regets in light of the evaluation

provided by Dr. Parker and the other evidence in the record.

II.    This Matter Should Be Remanded for Further Administrative Proceedings

        The Court may remand this case "either for additional evidence and findings or to award benefits."

Smolen, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course,

except in rare circumstances, is to remand to the agency for additional investigation or explanation."

Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in

which it is clear from the record that the claimant is unable to perform gainful employment in the national

economy," that "remand for an immediate award of benefits is appropriate." Id.

        Benefits may be awarded where "the record has been fully developed" and "further administrative

proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d

1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's]
> evidence, (2) there are no outstanding issues that must be resolved before a
> determination of disability can be made, and (3) it is clear from the record that the ALJ
> would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because,

as discussed above, issues remain with respect to plaintiff's residual functional capacity, this matter should

be remanded to the Commissioner for further administrative proceedings. Should such re-consideration

result in a different residual functional capacity assessment than was found by the ALJ, the Commissioner

also shall re-consider whether plaintiff is capable of performing other work existing in significant numbers in

the national economy in light of that new residual functional capacity assessment.

        It is true that where the ALJ has failed "to provide adequate reasons for rejecting the opinion of a

treating or examining physician," that opinion generally is credited "as a matter of law." Lester, 81 F.3d at

834 (citation omitted). However, where the ALJ is not required to find the claimant disabled on crediting

of evidence, this constitutes an outstanding issue that must be resolved, and thus the Smolen test will not be

REPORT AND RECOMMENDATION
Page - 12

found to have been met.  <u>Bunnell v. Barnhart</u>, 336 F.3d 1112, 1116 (9th Cir. 2003).  Further, "[i]n cases where the vocational expert has failed to address a claimant's limitations as established by improperly discredited evidence," the Ninth Circuit  "consistently [has] remanded for further proceedings rather than payment of benefits." <u>Bunnell</u>, 336 F.3d at 1116.  Here, as discussed above, it is not clear the ALJ would be required to find plaintiff disabled based on the medical evidence in the record, nor is there vocational expert testimony specifically addressing the limitations established by the improperly discredited evidence.  Thus, remand for an award of benefits is inappropriate at this time.

CONCLUSION

Based on the foregoing discussion, the Court should find the ALJ improperly concluded plaintiff was not disabled, and should reverse the ALJ's decision and remand this matter to the Commissioner for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have ten (10) days from service of this Report and Recommendation to file written objections thereto. <u>See also</u> Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **June 8, 2007**, as noted in the caption.

DATED this 14th day of May, 2007.


Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION
Page - 13